IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00678-DDD-KAS

MICHAEL LAWRENCE,

    Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT NO. 5,

    Defendant.
_____

**ORDER TO SHOW CAUSE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court sua sponte. Although Plaintiff proceeds in this matter pro se, he is a former attorney who was disbarred from the practice of law in December 2010 based on his convictions for three felonies: attempting to influence a public servant, forgery, and offering a false instrument for recording. *See People v. Lawrence*, No. 19PDJ061, 2019 WL 8503308, at *1 (Colo. O.P.D.J. Oct. 2, 2019) (denying this Plaintiff's petition for readmission and describing the basis for his disbarment).

**A.**    **Fed. R. Civ. P. 11(b)**

Rule 11(b) states that, by virtue of "signing, filing, submitting, or later advocating" a court filing, *i.e.*, "a pleading, written motion, or other paper," "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing "(1) is not being presented for any improper purpose"; (2) "the claims, defenses, and other legal

contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; (3) "the factual contentions have evidentiary support"; and (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Rule 11 serves to "deter baseless [court] filings" in and district courts have "broad discretion to impose Rule 11 sanctions[.]" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 407 (1990). Rule 11(c)(3) allows a court to sanction a litigant sua sponte for violating Rule 11(b), provided that certain procedures are followed. Namely, a court can "issu[e] a show cause order specifically describing the conduct implicating the rule, followed by a reasonable opportunity for the party/attorney so advised to demonstrate how [he] has not violated the rule." *Hutchinson v. Pfeil*, 208 F.3d 1180, 1184 (10th Cir. 2000).

To impose Rule 11 sanctions, a court must first find that a court filing violates Rule 11. *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019). To avoid sanctions, a litigant's conduct must be objectively reasonable. *Id.* at 1320 (citing *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988)). The objective reasonableness standard "applies whether the person against whom sanctions are sought is an attorney, a pro se litigant, or both." *McCormick v. City of Lawrence, Kan.*, 218 F.R.D. 687, 690 (D. Kan. 2003) (citing *Wesley v. Don Stein Buick, Inc.*, 184 F.R.D. 376, 378 (D. Kan. 1998)). For a legally trained litigant, the standard is "whether a reasonable and competent attorney would believe in the merit of an argument." *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991). However, "Rule 11 is not designed to frighten parties or attorneys

away from pursuing lawsuits or articulating creative theories of recovery." *Duprey v. Twelfth Judicial Dist. Ct.*, 760 F. Supp. 2d 1180, 1226 (D.N.M. 2009).

**B.      Plaintiff's Conduct**

Here, the Court has numerous concerns with Plaintiff's conduct and his filings in this case that warrant a show cause order. First, his Statement of Claims [#1-2] appears to include factual allegations that not only lack evidentiary support but are directly contradicted by information Plaintiff already knew when he filed his Complaint [#1]. Plaintiff alleges that "[b]ecause [he] refused to explain the arrests to the defendant, the defendant school district withdrew its offer of employment to [him]." *Statement of Claims* [#1-2], ¶ 11. This was plainly false.

On February 2, 2024, Linda M. Shamlin, Defendant's Director of Human Resources, emailed Plaintiff explaining that they were not moving forward because of his felony convictions and because he had lied on his application. *See Shamlin-Lawrence Email* [#12-14] at 1. In particular, she noted that Plaintiff had responded to the question "Have ever [sic] been convicted of any law violation?" by saying "No." *Id.* She had "reviewed [his] background report and found [his] response . . . to be inaccurate. Due to the felony charges, guilty dispositions, and application falsification [Defendant] will not be able to move forward with [Plaintiff's] hire." *Id.*; *see also Lawrence App. – Prescreening Questions* [#12-9] at 2 (Q. "Have you ever been convicted of any law violation? (Include any plea of 'guilty' or 'no contest.' Exclude minor traffic violations)." A. "No"). As part of his application to work for Defendant, Plaintiff also signed and notarized an "Oath" under penalty of perjury, in which he certified that "I HAVE NEVER BEEN convicted of

3

committing any felony *or misdemeanor* (other than a misdemeanor traffic offense or traffic infraction)." *See Oath* [#12-10] at 1.

Plaintiff knew that Defendant's reason for rescinding his employment offer was not his refusal to explain his arrests, but the fact that they resulted in three felony convictions, which he had lied about under oath. Despite knowing why his job offer was being rescinded, Plaintiff alleged that Defendant "apparently has an employment policy that bars employment to anyone who has ever been arrested." *Statement of Claims* [#1-2], ¶ 14. This contention is apparently based on the false allegation that Plaintiff was not hired because he refused to explain his arrest, and this allegation is otherwise completely unsupported. Yet Plaintiff's entire lawsuit hinges upon this false representation about why Defendant rescinded its employment offer, which has needlessly caused Defendant to incur attorney fees and the Court to expend time.

Second, the arguments Plaintiff made in his Motion for Sanctions [#25] were not objectively reasonable and he misstates the case law he cites. He cites *Green v. Missouri Pacific Railroad Company*, 523 F.2d 1290 (8th Cir. 1975) and *Gregory v. Litton Systems, Inc.*, 316 F. Supp. 401 (C.D. Cal. 1970) for the proposition that "employers who use criminal background checks without a time limit are in violation of Title VII." *See Motion for Sanctions* [#25] at 2. However, that was not the challenged policy in either *Green* or *Gregory*. In *Green*, the employer's challenged policy was to "disqualify[] for employment any applicant with a conviction for any crime other than a minor traffic offense." *Green*, 523 F.2d at 1293. In *Gregory*, the challenged policy was to 'exclud[e] from employment persons who have suffered a number of arrests without any convictions[.]" *Gregory*, 316

4

F. Supp. at 403. Neither case discussed a time limit (or lack thereof) on use of criminal background checks.

In the same Motion for Sanctions [#25], Plaintiff also misrepresented two of his previous cases, *Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM (D. Colo. 2022), and *Lawrence v. Nightingale Management, Inc.*, 24-cv-00237-DDD-KAS (D. Colo. 2024), as though they stood for the proposition that "[t]he EEOC has concluded on multiple occasions that employers such as the defendant who use open-ended criminal background checks are in violation of Title VII." *See Motion for Sanctions* [#25] at 2. In both cases, the EEOC made no such findings; rather, it issued Plaintiff a right to sue letter, which he then filed into both cases. *See Notice of Right to Sue* [#1-6], filed in *Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM (D. Colo. May 9, 2022); *Determination and Notice of Right to Sue* [#1-5], filed in *Lawrence v. Nightingale Management, Inc.*, No. 24-cv-00237-DDD-KAS (D. Colo. Jan. 25, 2024). In fact, in *Bonaventure*, both the Magistrate Judge and District Judge expressly rejected Plaintiff's argument that "the EEOC concluded that his claim falls within Title VII's protection and issued a notice of right to sue letter based on that finding[.]" *See Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM, 2023 WL 6976050, at *2 (D. Colo. Oct. 23, 2023) (*Bonaventure II*). Instead, the EEOC had "issued the letter at Plaintiff's request and did not intend to suggest that it believed that his claim has merit." *Id.* Here again, Plaintiff knows better. The EEOC did not conclude that the employers in *Bonaventure* or *Nightingale* violated Title VII, it merely issued him right to sue letters.

In his Response to Defendant's Motion to Dismiss [#14], Plaintiff also misstated the holding in *Green* and misstated Defendant's policy. He asserted that "[b]ackground

5

checks must have a time limit. This criterion comes to the EEOC Guidelines from *Green v. Missouri Pacific R.R.*, 549 F.2d 1158 (8th Cir. 1975).")."). *Response to Motion to Dismiss* [#14] at 3. Again, *Green* said nothing of the sort. Plaintiff described the Defendant's alleged policy as "disqualif[ying] from employment anyone with an arrest from anytime previously. There is no time limit on when the offense or arrest occurred, no limit on the crime at issue, and no effort made to ascertain whether the offense has any connection to the job at issue." *Id.* at 4. As previously noted, Plaintiff was told exactly why Defendant was rescinding its job offer—he had lied on his application and was convicted of three felonies, not merely arrested—and he knows that his three felony convictions involved dishonest or fraudulent conduct. Given all these observations, the Court questions whether an objectively reasonable, legally trained litigant would have filed the Complaint [#1], Response to Motion to Dismiss [#14] and Motion for Sanctions [#25 that Plaintiff filed.

Finally, in addition to the lack of legal and factual basis for Plaintiff's claims, the Court is concerned that his filing of the Complaint [#1] in this matter may have been motivated by an improper purpose, i.e. to harass Defendant, to needlessly increase the cost of litigation, and to pressure it to pay him a settlement. The Court takes note of Plaintiff's lengthy list of federal cases, many of which involved virtually identical disparate impact claims. *See Litigation List* [#12-1]. At least the following cases involved nearly identical causes of action:

- *Lawrence v. Sodexo, Inc.*, No. 19-cv-03057-DDD-SKC (D. Colo. Oct. 25, 2019) (alleging invasion of privacy and disparate impact claims based on

6

the defendant terminating Plaintiff's job as a cook after it conducted criminal background check);

- *Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM (D. Colo. May 29, 2022) (alleging disparate impact claim based on the defendant rescinding a job offer as a line cook that was contingent on passing a criminal background check);[1]

- *Lawrence v. Nightingale Management, Inc.*, No. 24-cv-00237-DDD-KAS (D. Colo. Jan. 25, 2024) (alleging disparate impact claim based on the defendant rescinding a job offer as a cook after it conducted background check of Plaintiff); and

- *Lawrence v. Jobletics Pro, Inc.*, No. 24-cv-00279-DDD-KAS (D. Colo. Jan. 30, 2024) (alleging disparate impact claim based on the defendant terminating Plaintiff's job as a cook after it learned the results of his criminal background check).

Plaintiff's invocation of this very same flimsy disparate impact Title VII claim against Defendant seems to be motivated by an improper purpose—after all, when he learned that Defendant was rescinding the job offer, he responded just eight minutes later with, "I guess we'll meet again in court." *See Shamlin-Lawrence Email* [#12-14] at 1.[2] Sure enough, Plaintiff rushed to Court, making no effort to exhaust administrative

---

[1] Plaintiff paid the filing fee in this matter. *See Receipt* [#4], filed in *Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM (D. Colo. May 9, 2022).

[2] This warning echoes an email Plaintiff sent to the defendant in *Nightingale*, where he threatened costly litigation and urged them to pay him. *See Lawrence Email* [#29-2], filed in *Lawrence v. Nightingale Management, Inc.*, No. 24-cv-00237-DDD-KAS (D. Colo. May 16, 2024) ("If you wish to avoid the cost of litigating this case in court, which will be considerable, I would be amenable to discussing a settlement of my claim.").

7

remedies—and when Defendant pointed out this failure, Plaintiff offered the "threadbare and unsupported" contention that exhaustion would have been futile, so he did not need to try. *See Recommendation* [#29] at 14. Yet Plaintiff **knows** he must exhaust administrative remedies with the EEOC before he can file suit—both then-Magistrate Judge Mix and Senior District Judge Martinez told him so in *Bonaventure*. *See Bonaventure II*, 2023 WL 6976050, at *4-5 (adopting Judge Mix's recommendation to dismiss Plaintiff's disparate impact claim with prejudice for failure to exhaust administrative remedies). His knowing decision to rush to Court before following required procedures strongly suggests an improper motive.

The Court does not issue this show cause order lightly. But Plaintiff is a disbarred former attorney and, given the fraudulent and dishonest nature of his three felony convictions (forgery, offering a false instrument for recording, and attempting to influence a public servant), he should certainly know better than to misstate the facts in his Complaint [#1], to misrepresent case law, and to use legal process for an improper purpose. The Court takes this conduct very seriously. *Cf. McNamara v. Brauchler*, 570 F. App'x 741, 743 n.2 (10th Cir. 2014) (finding "no reason to hold [a disbarred attorney] to a less stringent standard than other legally trained individuals"). Nonetheless, Plaintiff must be given an opportunity to explain himself. *Cf. Hutchinson*, 208 F.3d at 1184 (stating that noncompliance with the procedural protections of Rule 11(c) was an abuse of discretion requiring reversal).

8

**C.     Conclusion**

Based on the foregoing,

IT IS HEREBY **ORDERED** that **on or before March 14, 2025**, Plaintiff shall respond, in writing, showing good cause why his litigation conduct described above has not violated Rule 11(b). Again, that litigation conduct consists of the false allegations in his Complaint [#1]; the potentially improper purpose behind filing this lawsuit; and his misstatement of case law and misrepresentation of his prior cases in his Response to the Motion to Dismiss [#14] and his Motion for Sanctions [#25]. **Plaintiff is warned that failure to respond and show good cause will result in the Court recommending sanctions pursuant to Fed. R. Civ. P. 11(c), potentially including an order to pay a penalty into court and attorney fees to Defendant[3] and a recommendation to impose filing restrictions.**

Dated: March 3, 2025                                          BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

[3] This Order to Show Cause is issued pursuant to 28 U.S.C. § 636(c)(1)(A) and the Order Referring Case [#6], which authorizes the undersigned to "hear and determine pretrial matters[.]" Here, Plaintiff's conduct relates to his signing and submitting pretrial filings, so non-dispositive Rule 11 sanctions, such as monetary penalties, fall within the undersigned's authority. *See, e.g.*, *Carlson v. Town of Mountain Vill., Colo.*, No. 17-cv-02887-PAB-STV, 2019 WL 5819971, at *1 n.1 (D. Colo. Nov. 7, 2019) (magistrate judge finding that he had authority pursuant to 28 U.S.C. § 636(b)(1)(A) to rule on a Rule 11 sanctions motion "[b]ecause the instant Motion does not seek— nor is the Court imposing—dispositive sanctions"); *Bergeson v. Dilworth*, 749 F. Supp. 1555, 1561-62 (D. Kan. 1990) (concluding that Rule 11 sanctions were "a matter within the magistrate's general authority to 'hear and determine' pretrial matters" where it was "apparent that the pretrial motion for sanctions related to conduct of counsel for the signing of pretrial filings.").